FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAR 16 PM 4:31

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ORECK HOLDINGS, L.L.C., <br> *a Delaware limited liability company,* | ) <br> ) <br> ) | |
| | ) | CIVIL ACTION NO. 04-3335 |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | SECTION "T" |
| EURO-PRO CORPORATION. | ) <br> ) | |
| Defendant. | ) <br> ) | MAGISTRATE "3" |
| | ) <br> ) <br> ) <br> ) | |

---

## MOTION FOR PRELIMINARY INJUNCTION

---

**NOW INTO COURT,** through its undersigned counsel, comes Oreck Holdings, LLC ("Oreck"), and pursuant to Rule 65 of the Federal Rules of Civil Procedure, and for the reasons expressed in the accompanying memorandum, moves the Court for an order that will preliminary enjoin the defendant Euro-Pro Operating, LLC ("Euro-Pro"), from infringing Oreck's XTENDED LIFE trademark, which is registered with the United States Patent and Trademark Office on June 12, 1979 as Registration No. 1,119,923

\_\_ Fee_____
\_\_ Process_____
_X_ Dktd_____
✓ CtRmDep_____
\_\_ Doc. No._____

1

In further support of this motion, Oreck alleges the following:

1.  Reference is made to the Complaint and Amended Complaint herein.

2.  Reference is also made to Oreck's trademark registration No. 1,119,923, a copy of which is attached hereto as **Exhibit A.**

3.  Euro-Pro has recently introduced, and now manufactures and sells, an electrically powered "sweeper" that it refers to as the "Professional Sweeper" or the "Professional Cordless Sweeper."   Placed prominently on this product, as well as on advertising materials for the product, is the phrase "XTEND TIME," with a large stylized "X."  The mark used by Euro-Pro is substantially and confusingly similar to Oreck's registered trademark.

4.  It is virtually impossible for Oreck to quantify the damage done to it by virtue of Euro-Pro's trademark infringement.  Since Oreck will suffer irreparable injury, and since it is likely to prevail on the merits of this case, it is appropriate that this Court preliminarily enjoin Euro-Pro from any further infringement or use of Oreck's trademark.

5.  In support of its motion for preliminary injunction, Oreck attaches hereto as **Exhibit B** the affidavit of Marshall Oreck, with supporting exhibits.   Oreck further refers to its memorandum of facts and authorities that is also attached hereto.   Oreck requests that it be permitted to offer live testimony at the hearing that is scheduled before this Court on April 20, 2005.

**WHEREFORE,** Oreck prays that its motion for preliminary injunction be considered by the Court, and that, after due notice to the defendant, the defendant be preliminarily enjoined from utilizing its XTEND TIME mark.

Respectfully submitted,

_[signature]_

Frederick W. Bradley, (La. Bar. No. 3374)
**ORECK, BRADLEY, CRIGHTON,**
  **ADAMS & CHASE**
1100 Poydras Street, Suite 1480
New Orleans, Louisiana 70163-1480
Telephone: (504) 525-8001

Attorneys for Plaintiff
ORECK HOLDINGS, LLC

### Certificate of Service

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon the defendant by mailing a copy of same to its counsel of record this 16th day of March, 2005.

_[signature]_

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ORECK HOLDINGS, L.L.C.,** *a Delaware limited liability company,* | ) ) ) | **CIVIL ACTION NO.  04-3335** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **SECTION: "T"** |
| **EURO-PRO CORPORATION.** | ) ) | **MAGISTRATE:  3** |
| **Defendant.** | ) ) ) ) ) ) | |

## MEMORANDUM OF ORECK HOLDINGS, LLC IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

## <u>Introduction</u>

This is an action by Oreck Holdings, LLC ("Oreck Holdings") against Euro-Pro Operating, LLC ("Euro-Pro") for trademark infringement under the Lanham Act and under Louisiana law.  Within the last several weeks, Euro-Pro has introduced a product that competes directly with products manufactured and sold by Oreck's affiliates.  On its new product, the

"Professional Cordless Sweeper," Euro-Pro has affixed a trademark (**XTEND TIME**) that is deceptively similar to a registered trademark (**XTENDED LIFE**) that Oreck and its predecessors have promoted and used for over thirty-five years.  Oreck has moved this Court for an order that will preliminarily enjoin Euro-Pro from using this mark.  In support of its motion, Oreck relies upon the Affidavit of Marshall Oreck.  It provides the following analysis of the relevant facts and law.

**Factual Background**

Oreck Holdings is a holding company that owns intellectual property rights such as patents and trademarks.  It licenses these rights to its affiliate, Oreck Corporation, a well-known manufacturer and marketer of vacuum cleaners and other household floor-care products.  Oreck Corporation spends millions of dollars each year advertising and promoting its products and trademarks.  Oreck's **XTENDED LIFE** trademark is prominently featured in these advertisements.

Oreck Holdings owns a registered trademark for the phrase **XTENDED LIFE**.  It was filed in the United States Patent and Trademark Office, under Registration No. 1,119,923, on June 12, 1979.  A copy of the trademark registration is attached to the Complaint.  Oreck Holdings and its predecessors have used that mark on "Oreck" products since 1969.[1]  The mark has been prominently displayed on floor care products that have been widely advertised and sold throughout this country.

---

[1] Oreck's trademark was registered in connection with Class 7, vacuum cleaners.  Since the initial registration, Oreck has obtained additional registrations for **XTENDED LIFE** in Class 9 for phonographs, radio receivers, stereo amplifiers, magnetic tape players and recorders (Registration No. 1,128,184, dated Dec. 25, 1979), and in air cleaners for commercial and residential use (Registration No. 2,788,878, dated Dec. 2, 2003).

Euro-Pro has recently launched a new product, which it refers to as its "Professional Cordless Sweeper." In early December 2004, Oreck became aware of this new product. A trade journal contained a full page advertisement for Euro-Pro's new sweeper. Prominently shown on the front of the new sweeper is the phrase XTEND TIME, a thinly disguised variation of the Oreck trademark. Euro-Pro's "X" is enlarged and in bold and the remaining letters are capitalized, thus mirroring the Oreck trademark in their appearance. Oreck does not yet know the extent to which there have been sales of this product, but understands that Euro-Pro has begun, and is planning on pursuing, a vigorous advertising campaign that will feature the product. A Euro-Pro print ad has suggested that it has committed over $15 million in advertising media expenses. Euro-Pro's use of the phrase XTEND TIME constitutes clear and intentional infringement of Oreck's registered trademark, XTENDED LIFE.

**Relevant Law**

To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendant; and (4) that the injunction will not impair the public interest. *See Sugar Busters LLC v. Brennan,* 177 F.3d 258, 265 (5th Cir. 1999); *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1987). Oreck will discuss each of these elements.

**1. Likelihood of Success**

In a trademark infringement claim, the plaintiff must demonstrate (1) that it has a valid mark that is entitled to protection under the Lanham Act, and (2) that use of the defendant's mark

infringes, or is likely to infringe, the mark of the plaintiff. *Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir. 1997).

Oreck has a valid trademark that is entitled to protection. It has prominently displayed the **XTENDED LIFE** trademark on its vacuum cleaners since 1969, a period of over thirty-five years. Its first use in commerce by Oreck was in 1969. The trademark was formally registered with the United States Patent and Trademark Office in 1979. Under federal law, Oreck's certificate of registration constitutes *prima facie* evidence of the validity of the mark. It also provides *prima facie* evidence of Oreck's exclusive right to use the mark in commerce for the product specified in the registration. 15 U.S.C. §§ 1057(b), 1115; *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir. 1974). After five consecutive years of continuous use in commerce, a registration becomes conclusive evidence of the registrant's right to use the mark and thereby achieves "incontestable" status. There can be no question as to the validity of Oreck's mark.

To prevail on its claim that its federally registered trademark has been infringed, Oreck must show that Euro-Pro used (1) a reproduction, counterfeit, copy or colorable imitation of the mark; (2) without Oreck's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use was likely to cause confusion or to cause mistake or to deceive. 15 U.S.C. § 1114(1). The first four requirements are easily satisfied. The relevant question here, as in virtually all trademark infringement cases, is whether the defendant's use of its mark creates a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the goods. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 543 (5th Cir. 1998).

In determining whether a likelihood of confusion exists, courts within the Fifth Circuit consider the following non-exclusive factors:

1. Strength of the plaintiff's mark,
2. Relatedness of the goods involved,
3. Similarity of the marks,
4. Evidence of actual confusion,
5. Marketing channels used,
6. Likely degree of purchaser care,
7. Defendant's intent in selecting a mark, and
8. Likelihood of expansion of product lines.

*Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 830 (5th Cir. 1998).  In *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998), the court explained that "[n]o one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'"[2]  Analysis of the factors favors Oreck under the facts of this case.

**Strength of plaintiff's trademark.**  Oreck owns the relevant trademark XTENDED LIFE, as is evidenced by its registration with the United States Patent and Trademark Office.  The phrase is distinct and unique.  It has been widely promoted over the last thirty-five years.  To provide a history of this use, Oreck has offered the affidavit of Marshall Oreck.  His affidavit shows that vacuum cleaners depicting the XTENDED LIFE mark have been advertised pervasively and repeatedly throughout the United States over the past several years in the print media, in

---

[2] The court cited its prior decision in *Conan Properties, Inc. v. Conan's Pizza, Inc.*, 752 F.2d 145, 149 (5th Cir. 1985), where it had stated:  "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported by even a majority of the seven factors."

direct mail, in widely circulated catalogs, on television infomercials and advertisements, on live television features on the QVC shopping network, and in retail establishments that carry Oreck products.[3]

A strong trademark is one that is rarely used by parties other than the owner of the trademark.  A weak trademark is one that is often used by other parties.  Until this use by Euro-Pro, no other manufacturer of vacuum cleaners or sweepers has seen fit to utilize the Xtended Life mark or any variation thereof.  Oreck has been the sole user of that mark in the relevant product line since 1969.[4]

The more distinctive a trademark, the greater its strength.  *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 504 (5th Cir. 1980)  A mark is strong where it has been the subject of extensive advertising and where it has been used repeatedly and widely over time.  *Bose Corp. v. QSC Audio Products, Inc.*, 293 F.3d 1367 (Fed. Cir. 2002) ("the fame of a mark may be measured indirectly, among other things, by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident.")  *See also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988).[5]

---

[3] There are currently approximately 500 Oreck owned or licensed retail establishments that that sell Oreck vacuum cleaners and other Oreck products.  These stores are located throughout the country.  They contain floor displays and photo advertisements that prominently display the XTENDED LIFE mark.

[4] Marshall Oreck Aff. at ¶ 24.

[5] *See also A&H Sportswear, Inc. v. Victoria Secret Stores, Inc.*, 237 F.3d 198, 224 (3d Cir. 2000) (amount of money spent on advertising by senior user, although not automatically indicative of consumer recognition, is relevant to analysis of commercial strength and marketplace recognition); *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F.Supp.2d 1216, 1227 (D. Colo. 2001).

The Affidavit of Marshall Oreck shows the extent to which the mark has been advertised over the course of the past decade, as well as the tremendous sums of money that have been spent by Oreck in promoting the mark and the products that bear the mark. The booklet that is attached to Mr. Oreck's affidavit provides an impressive perspective on the widespread and continuous use of the mark over the years. This factor clearly favors Oreck.

**Relatedness of the goods involved**. The greater the similarity between the goods that are involved, the greater the likelihood of confusion. *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 202 (5th Cir. 1997). Where goods directly compete with one another, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products. *Century 21 Real Estate Corp. v. Country Life of America*, 970 F.2d 874, 877 (Fed. Cir. 1992) ("When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines.")

The goods here are closely related. Oreck's mark is prominently displayed on its upright vacuum cleaners, as is shown in the many photographs that are contained in the exhibits that are attached to Marshall Oreck's affidavit. Euro-Pro's deceptively similar mark is now displayed on its electronic carpet sweeper. Both appliances are used to clean floors and carpets within a home. Both products are found within virtually every household in America. They complement one another. Indeed, Euro-Pro must necessarily concede that the two products are closely related in terms of their function and use. It is currently advertising that its new sweeper does "Everything you would expect a vacuum to do and more!" Euro-Pro cannot reasonably contend that its new product is not competing directly with Oreck's vacuum cleaner.

While Oreck does not produce and sell an *electrically* powered carpet sweeper, it is actively promoting and selling its own line of carpet sweepers, a fact that is well known to Euro-Pro. It sells thousands of sweepers every year. This enhances the danger that someone might be confused by the similar marks. "The danger of affiliation or sponsorship confusion increases when the junior user's services are in a market that is one into which the senior user would naturally expand." *Elvis Presley*, 141 F.3d at 202.[6] The two products at issue here—Oreck's vacuum cleaners bearing the **XTENDED LIFE** mark and Euro-Pro's product bearing the **XTEND TIME** mark—are closely related in function and purpose. Oreck's legitimate concern is that anyone viewing the Euro-Pro product, with its distinctive **XTEND TIME** mark, might reasonably believe that it has some association or affiliation with Oreck. *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 598 (5th Cir. 1985) ("Complimentary products have been held particularly susceptible to confusion.") This factor favors Oreck.

**Similarity of the marks.** In determining whether two marks are confusingly similar, of course, the appropriate test is not a side by side comparison of the marks, which would possibly emphasize the differences in detail, it is whether the average consumer, on encountering one mark in isolated circumstances of the marketplace, and having only a general recollection of the other, would likely confuse or associate the two. *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 477-78 (3rd Cir. 1998).

The marks at issue in this case are confusingly similar because of where they are placed on the competing products, because of the unique dominant word "Xtend," because of the bold

---

[6] This "digit of confusion" was found to be in the plaintiff's favor where the defendant's product was within the plaintiff's "natural zone of expansion." *Westchester Media v. PRL Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000).

"X," and because of the overall "look" of the two marks. "The similarity of the marks in question is determined by comparing the marks' appearance, sound, and meaning." *Elvis Presley, supra*, 141 F.3d 188, 201 (5th Cir. 1998). The court's comparison of marks, sometimes called an "eyeball" test, emphasizes the total effect rather than individual features. "Even if prospective purchasers recognize that the two designations are distinct, confusion may result if purchasers are likely to assume that the similarities in the designations indicate a connection between the two users. The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Id.*

The fact that Oreck's mark contains the word "Life," whereas Euro-Pro's contains the word "Time," is of no moment. The obvious dominant part of both marks is the stylized and artificially contrived word "Xtend." The improper spelling of the word "extend" compels the attention of the viewer. It is the "look" that people will remember. Words such as "life" and "time" are highly generic. Under well established precedents, they should be disregarded in the court's analysis. They tend to blur, particularly here where both words are so common and have four letters, two of which are the same. The cases recognize that the court's focus should be on the *distinctive* part of a mark: "One feature of a mark may be more significant than other features, and ... it is proper to give greater force and effect to that dominant feature." *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983); *Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 219 (5th Cir. 1985). Numerous courts have concluded that when the dominant portion of two marks is the same, confusion is likely. *Country Floors, Inc. v. A Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991) (the

9

word "Country" was dominant in the competing marks "Country Floors" and Country Tiles").
In another similar case, the court held that "Quantum" was the dominant portion of the
competing marks "Quantum Fitness" and "QLS Quantum LifeStyle." A preliminary injunction
was granted where the parties were in related lines of business. Plaintiff manufactured personal
fitness equipment and the defendant was in the business of operating health and fitness clubs.
*Quantum Fitness Corp. v. Quantum Lifestyle Centers, LLC*, 83 F.Supp. 2d 810 (S.D. Tex. 1999).

The similarity between the two marks in this case is particularly evident, since they are
being shown widely over the same media to the same audience and since there are no other
competitors in the relevant industry that use the distinct word Xtend in their advertising.

In *TBC Corp. v. Holsa, Inc.*, 126 F.3d 1470, 1472 (Fed. Cir. 1997), the court found
similarity, and therefore likelihood of confusion, between plaintiff's "Grand Am" trademark for
tires and defendant's proposed "Grand Slam" brand of tires. The court commented as follows:
"We feel that in this age of business over the telephone and advertising on TV and radio the
close similarity in sound between GRAND AM and GRAND SLAM would be likely to result in
mistake if not confusion." Similarly, in *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30
F.3d 466 (3d Cir. 1994), the court suggested that the defendant's use of FAIRWAY GREEN for
a fertilizer product was likely to be confused with the plaintiff's use of FAIRWAY for peat
moss. The court noted that there was a similarity in function between the two products since
both had the same purpose of improving the soil for planting. A consumer would reasonably
conclude that one company might offer both of these related products.[7]

---

[7] There are literally hundreds of reported cases involving trademark infringement. While each case must
be considered in light of its own facts, there are many cases such as this one where preliminary injunctive
relief has been granted where the dominant portion of a mark was infringed by the defendant's slightly

This "similarity" factor is widely regarded as being of greatest importance where products are competing with one another. This factor clearly favors Oreck.

**Evidence of Actual Confusion**:   While evidence of actual confusion generally strengthens the plaintiff's claim in a trademark infringement case, such evidence is "not necessary to a finding of a likelihood of confusion." *Elvis Presley*, 141 F.3d at 203. In this case, of course, the Euro-Pro product has just been launched and there has been no opportunity to determine whether there is any actual confusion in the marketplace. Oreck's concern, of course, is that persons seeing the Euro-Pro **EXTEND TIME** mark would buy the product thinking that there was some affiliation with or sponsorship by Oreck. Under such circumstance, it would be virtually impossible for Oreck to discover evidence that such was the case.

**Marketing channels used.** Euro-Pro is advertising its new product primarily by means of an infomercial that is being aired repeatedly on television channels throughout the country. Oreck advertises its products through that same media. In *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 506 (5th Cir. 1980), the Fifth Circuit emphasized that "[t]he greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion." In addition to advertising through infomercials, the two companies advertise and market their products over the internet, through retail establishments, and by print advertisements in

different use of that mark. *See, e.g., Country Floors, Inc. v. Gepner*, 930 F.2d 1056 (3d Cir. 1991) (discussed above); *Bose Corp. v. QSC Audio Products, Inc.*, 293 F.3d 1367 (Fed. Cir. 2002) (owner of trademark for ACOUSTIC WAVE and WAVE established likelihood of confusion in opposing defendant's attempt to register POWERWAVE for amplifiers); *Kangol, Ltd. v. KangaROOS USA*, 974 F.2d 161 (Fed. Cir. 1992) (Kangol and Kangaroo sufficiently similar to KangaROOS for athletic shirts to create likelihood of confusion); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) ( plaintiff owner of "Beanie Babies" mark for plush toy animals obtained preliminary injunction against "Beanie Racer" for plush toy cars); *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 200 F.3d 929 (6th Cir. 1999) *reversed on other grounds*, 532 U.S. 23 (2001) (plaintiff's mark WindMaster entitled to preliminary injunction against defendant's mark WindBuster).

newspapers, direct mail pieces, and third party catalogs.  Their advertising is directed toward the same customer base.  Courts have consistently recognized that confusion is far more likely where products are sold through the same channels of trade to the same purchasers.  *Ambriet, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1541 (11th Cir. 1986).  This factor favors Oreck.

**Likely Degree of Purchaser Care**:  The more expensive the product, the less likelihood there is for confusion with regard to the source of the goods.  "When services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases.  When services are sold to such buyers, other things being equal, there is less likelihood of confusion." *Homeowner's Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1111 (6th Cir. 1991).  Euro-Pro's product is being offered for about $80, which is a relatively insignificant amount of money.  Oreck's competing carpet sweepers sell for between $50 to $90.  Given this price point, the consideration given by the consumer is not likely to be particularly great.  This factor indicates a greater "likelihood of confusion" and therefore favors Oreck.

**Defendant's intent on selecting a mark.**  Where a defendant adopts a mark with full knowledge of a plaintiff's identical or clearly similar mark, courts have held that wrongful intent may be inferred.  *Miss Universe, Inc. v. Pitts,* 714 F.Supp. 209, 215 (W.D. La. 1989).  As described in the affidavit that accompanies Oreck's motion, the floor care industry is a fairly tight-knit industry.[8]  Competitors are keenly aware of what each other is doing.  Euro-Pro has a long history of copying Oreck's styles and methods of advertising.  It used an Oreck vacuum as a "foil" in one of its recent advertising campaigns.  It is not possible that Euro-Pro was unaware of Oreck's use of the mark **XTENDED LIFE** or the manner and design of the lettering.  Oreck

---

[8] Marshall Oreck Aff. at ¶ 19.

believes that Euro-Pro intentionally copied Oreck's mark on its own product, adding the slight variations in an attempt to gain a plausible defense to the claim of infringement.

Euro-Pro's history of copying Oreck's trademarks and advertising techniques is well documented in this court. In recent years, Oreck has been required on at least three occasions to file trademark infringement suits against Euro-Pro.[9] In its first suit, filed in 2001, Oreck alleged that Euro-Pro was advertising its products by showing their ability to lift a bowling ball, thereby infringing a trademark that Oreck had long used. That trademark depicted the ability of an Oreck vacuum to lift through suction a 16 pound bowling ball. Oreck had used that mark for years. The suit ended in a settlement in which Euro-Pro acknowledged Oreck's mark and agreed to refrain from using it. In late 2002, Euro-Pro launched a multi-million advertising campaign in which its infomercial contained disparaging images of an Oreck vacuum cleaner. Oreck filed suit in this court and, in September 2003, obtained a preliminary injunction against Euro-Pro on the basis of its false advertising claims. The case was ultimately settled. In 2003, Oreck sued Euro-Pro a third time for trademark infringement based on Euro-Pro's use of a trademarked advertising phrase, "Take the Oreck Challenge." In that case, Euro-Pro entered into a settlement agreement whereby it promised to discontinue all uses of that phrase in its advertising.[10]

The affidavit of Marshall Oreck shows that competitors in the floor care industry are aware, through their continual review of competing products, through trade shows and journals,

---

[9] Marshall Oreck Aff. at ¶ 21.

[10] The cases bore the following captions: *Oreck Holdings, LLC v. Euro-Pro Corporation*, No. 01-1245, U.S. District Court, Eastern District of Louisiana; *Oreck Holdings, LLC v. Euro-Pro Corporation*, No. 03-318, U.S. District Court, Eastern District of Louisiana; and *Oreck Holdings, LLC v. Euro-Pro Corporation*, No. 03-2150, U.S. District Court, Eastern District of Louisiana.

and through advertising media, of the products that are being offered by their competitors.[11] They routinely study them to observe and analyze new features, as well as the overall appearance of the product. Euro-Pro was almost certainly aware of Oreck's trademark when it copied Oreck's mark. This conclusion is readily inferred from other similarities between Euro-Pro and Oreck products. For example, Euro-Pro calls its new product the "Professional" Sweeper. "Professional" is a word that Oreck has used in naming its widely sold air purifier as well as its commercial vacuum cleaner. Euro-Pro advertises the fact that it has a "dirt seeking" headlight. Oreck has a trademark for and advertises its own "Dirt Search" headlights on its vacuum cleaners. Oreck offers viewers and readers to "Take the Oreck Challenge," which permits consumers to try its products on a risk-free basis for thirty days. Euro-Pro now makes the same offer in its advertising.[12]

While Oreck has not had the opportunity to conduct formal discovery of Euro-Pro to determine the source of its XTEND TIME mark, it is reasonable to conclude that it selected that mark with the intent of trading off of Oreck's reputation in the industry. This is a fair inference given Euro-Pro's persistent parroting of the advertising methods and marks used by Oreck. Its intent to copy is an element that favors Oreck in the likelihood of confusion analysis.

**Likelihood of expansion of product lines.** The "product line" in this case may be described as carpet sweepers or floor care products. As discussed above, Oreck is in both lines. While Oreck does not currently make or sell an electronically powered carpet sweeper, a consumer would reasonably expect Oreck to expand into that product line. Trademark protection

---

[11] *Id.* at ¶ 19.

[12] *Id.* at ¶ 20.

extends to products that the buying public would reasonably expect to come from the same source. *Aviation Novelties Corp. v. Baxter Lane Co. of Amarillo*, 685 F.2d 988, 990 (5th Cir. 1982) ("[T]he first user of a mark [may] challenge any use of that mark by a new user which inferentially suggests that the first user is selling the new goods in an expanded line of business.") Clearly, this factor favors Oreck.

**Overview as to "Digits of Confusion."** The factors in the foregoing analysis weigh strongly in favor of Oreck. While there is no evidence of actual confusion, there has been no practical ability to make such a determination in light of the fact that Euro-Pro's product has just been launched. There is a substantial likelihood that Oreck will succeed on the merits of its trademark infringement claim.

## 2. **Irreparable Injury**

The great weight of authority throughout this country is that "irreparable injury" is the inherent result of trademark infringement. As Professor McCarthy has stated in his treatise:

> The majority of courts will find sufficient irreparable injury to grant a preliminary injunction in a trademark case when plaintiff shows that, pending trial, it will lose control of its reputation because it rests upon the quality of defendant's activities as a result of a likelihood of confusion of purchasers. The rule is that the irreparable injury requirement is satisfied if a likelihood of confusion is proven because *trademark infringement damages are by their nature irreparable.*

4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* §30:47 (4th ed. 2003) (emphasis added). Circuit courts have reasoned uniformly that trademark infringement damages are, by their very nature, irreparable.[13] While the Fifth Circuit has not written expressly on this

---

[13] *See Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot be adequately compensated. Hence, irreparable harm flows from an unlawful trade infringement as a matter

subject, there is no reason to believe that it would not subscribe to this widespread rule.  In fact,

district court cases within the Fifth Circuit have issued preliminary injunctions under the

assumption that a likelihood of success on the merits of the trademark infringement claim

constitutes evidence of irreparable injury.[14]

---

of law."); *Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2nd Cir. 1985) (irreparable injury is shown where the plaintiff will lose control over its reputation pending the trial); *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2nd Cir. 1987); *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2nd Cir. 2000) ("[P]roof of a likelihood of confusion would create a presumption of irreparable harm, and thus a plaintiff would not need to prove such harm independently."); *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187, 195-96 (3rd Cir. 1990) (once a showing of likely confusion is made, the "inescapable conclusion is that there was also irreparable injury"); *Wynn Oil Company v. American Waste Service Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) ("A finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears"); *Circuit City Stores, Inc. v. Car Max, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) ("The law of this Circuit holds that no particular finding of ... irreparable harm is necessary for injunctive relief in a trademark infringement or unfair competition case.... [I]rreparable injury ordinarily flows when a likelihood of confusion or possible risk of reputation appears from infringement or unfair competition."); *Eli Lilly & Company v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) (irreparable injury generally presumed in trademark infringement cases); *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987) (Irreparable injury is presumed once the moving party demonstrates probable success in proving a likelihood of confusion); *New Kayak Pool Corp. v. R. & P Pools, Inc.*, 246 F.3d 183, 185 (2d Cir. 2001); *Lone Star Steak House v. Alpha of Virginia*, 43 F.3d 922, 939 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement."); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."); *McDonald's Corp. v. Robinson*, 147 F.3d 1301, 1310 (11th Cir. 1998) ("[T]his Circuit has held that a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of...[a] substantial threat of irreparable harm.").

[14] *See Bayer Corporation v. Custom School Frames*, LLC, 259 F.Supp.2d 503, 510 (E.D. La. 2003), where Judge McNamara held: "Trademark infringement, unfair competition, and dilution by their very nature result in irreparable injury since the attendant loss of goodwill, reputation and business cannot adequately be quantified and the trademark owner cannot adequately be compensated." *See also Quantum Fitness Corporation v. Quantum Lifestyle Centers, LLC*, 83 F.Supp.2d 810, 831 (S.D. Tex. 1999) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury...."); *Miss Universe, Inc. v. Pitts*, 714 F. Supp. 209, 219 (W.D. La. 1989) ("trademark cases involve a unique threat of irreparable injury.")

### 3. **Balance of Equities**

The threatened injury to Oreck far outweighs whatever harm the issuance of an injunction may cause Euro-Pro.  Oreck has spent years building up the goodwill in its business and in its marks, particularly its XTENDED LIFE mark.  This is shown in the long history of its use, in the tremendous sales of products bearing the mark, and in the millions of dollars in advertising that has accompanied those sales.  Oreck has spent great effort and sums in establishing recognition and acceptance of its marks in connection with the sales of its vacuum cleaners.  The denial of a preliminary injunction would place the risk of likelihood of confusion on Oreck's shoulders, with the concomitant potential for loss of customers and irreparable injury to its business reputation.  On the other hand, Euro-Pro has only begun to sell its products with the offending trademark and can readily alter the labeling of the product.  It brought any hardship on itself by knowingly using a registered trademark that had been promoted and advertised by Oreck.

The threat of injury to the plaintiff is greater, of course, where the defendants are latecomers to the industry and where the products have not been as heavily promoted.  *Miss Universe, Inc. v. Pitts*, 714 F.Supp. 209, 219 (W.D. La. 1989).  Again, that is the situation here.

### 4. **The Public Interest**

The public interest will be served by protecting Oreck's trademark.  "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."  *Quantum Fitness Centers v. Quantum Lifestyle Centers LLC*, 83 F.Supp.2d 810, 832 (S.D. Tex. 1999); *Miss Universe, supra*, ("By ensuring correct information in the market place, the trademark laws reduce losses caused by

misunderstanding and deceit and thus permit consumers and merchants to maximize their own welfare confident that the information presented is truthful." 714 F.Supp. at 219.

## Conclusion

Oreck has been promoting and advertising products with its Xtended Life mark for at least three decades. It has spent millions of dollars in this effort. It has owned a registered trademark in the phrase since 1979. It is grossly unfair that Euro-Pro should come along and exploit Oreck's mark (and quite likely its reputation) by the use of a deceptively similar mark. Under the Fifth Circuit's "likelihood of confusion" analysis, the factors show that Oreck is likely to prevail on the merits of its trademark infringement claim.

In light of the facts and legal authorities set forth in its motion, the affidavit of Mr. Marshall Oreck, and in this brief, Oreck respectfully requests that the Court grant its motion for a preliminary injunction.

Respectfully submitted,

Frederick W. Bradley, (La. Bar. No. 3374)
**ORECK, BRADLEY, CRIGHTON,**
**ADAMS & CHASE**
1100 Poydras Street, Suite 1480
New Orleans, Louisiana 70163-1440
Telephone: (504) 525-8001

Attorneys for Plaintiff
ORECK HOLDINGS, LLC

## Certificate of Service

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon the defendant by hand delivering same to its counsel of record this 16th day of March, 2005.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

ORECK HOLDINGS, L.L.C.,                    )
*a Delaware limited liability company,*    )
                                           )    **CIVIL ACTION NO. 04-3335**
   **Plaintiff,**           )
                                           )
   **v.**                   )    **SECTION "T"**
                                           )
EURO-PRO CORPORATION.                      )
                                           )
   **Defendant.**           )    **MAGISTRATE "3"**
                                           )
                                           )
                                           )
_____    )

---

## NOTICE OF HEARING ON MOTION OF ORECK HOLDINGS, LLC
## FOR PRELIMINARY INJUNCTION

---

**TO:** Robert E. Kerrigan, Jr., Esq.
   Deutsch, Kerrigan & Stiles, L.L.P.
   755 Magazine Street
   New Orleans, Louisiana 70130-3672

   **NOTICE** is hereby given that the foregoing Motion for Preliminary Injunction will be

heard on the 20th day of April, 2005, at 10 o'clock a.m., or as soon thereafter as counsel may be

heard, in Section "T", United States District Court for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana.

Dated:  March 16, 2005.

Respectfully submitted,

_____

Frederick W. Bradley, (La. Bar. No. 3374)
**ORECK, BRADLEY, CRIGHTON,**
**ADAMS & CHASE**
1100 Poydras Street, Suite 1480
New Orleans, Louisiana 70163-1480
Telephone:  (504) 525-8001

Attorneys for Plaintiff
ORECK HOLDINGS, LLC

## Certificate of Service

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon the defendant by mailing a copy of same to its counsel of record this 16th day of March, 2005.

_____

2

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED